IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

| | | |
|---|---|---|
| JAMES GILBERT WOODSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 5:07-0141 |
| | ) | |
| J.D. HUPPENTHAL, | ) | |
| Administrator, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

PROPOSED FINDINGS AND RECOMMENDATION

On March 7, 2007, Plaintiff, acting *pro se* and incarcerated at the Mount Olive Correctional Complex [MOCC], in Mount Olive, West Virginia, filed his Complaint in this matter claiming entitlement to relief pursuant to 42 U.S.C. § 1983.[1] (Document No. 1.) Plaintiff names the following as Defendants: (1) J.D. Huppenthal, Administrator of Southern Regional Jail; (2) PrimeCare Medical; (3) Kim Browning, Head Nurse; (4)Officer Hanson,[2] Retired Correctional Officer; and (5) West Virginia Regional Jail and Correctional Facility. (Id.) By Standing Order entered on August 1, 2006, this matter was referred to United States Magistrate Judge Stanley for the submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 4.) On January 8, 2008, the above reference was withdrawn and this

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

[2] Mr. Hanson resigned on April 7, 2005, due to health problems. (Document No. 12-2, p. 3.)

matter was referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and a recommendation for disposition. (Document No. 33.)

## FACTS AND PROCEDURE

Plaintiff alleges that Defendants provided inadequate medical care during Plaintiff's incarceration at the Southern Regional Jail [SRJ] from 2003 until 2006. Plaintiff's Complaint states the following:

> During my incarceration at the Southern Regional Jail (2003-2006). I was subjected to cruel and unusual punishment by C.O. Hanson. Mr. Hanson used a cigarette lighter to burn my face and right eye. This traumatized the eye to the point where I was left blind in my eye. When confiding in the nursing staff, Kim Browning said she was setting up an eye appointment for me. After testing and filming was complete, no appointment was made. The eye progressively worsened until I was blinded totally. This left me with severe headaches until, finally in February 2007, Mt. Olive Correctional Complex sent me to Montgomery General Hospital for corrective eye surgery.

(Document No. 1, pp. 4-5.) Plaintiff seeks punitive damages in the amount of One Million Dollars. (Id., p. 5.)[3]

On April 5, 2007, Defendants Huppenthal, Hanson, and the West Virginia Regional Jail and Correctional Facility Authority, by counsel, filed a Motion to Dismiss or in the Alternative for Summary Judgment with Memorandum in Support. (Document Nos. 12 and 13.) Defendants contend that Plaintiff's Complaint must be dismissed for the following reasons: (1) Plaintiff failed to exhaust his administrative remedies; (2) Defendants are protected by qualified immunity; (3) Plaintiff's claim is barred by the Eleventh Amendment to the United States Constitution and the Will Doctrine;

---

[3] Though Plaintiff indicates that Correctional Officer Hanson caused an injury to his face and right eye with a cigarette lighter, it does not appear that he is claiming that Correctional Officer Hanson used excessive force or committed battery upon him in this matter. Rather, Plaintiff is complaining that Defendants acted with deliberate indifferent to vision problems and his loss of sight which developed as a consequence of Correctional Officer Hanson's conduct.

and (4) Plaintiff's claim fails to establish that Defendants were deliberately indifferent to a serious medical need. (Document No. 12.)

On April 17, 2007, PrimeCare Medical of West Virginia, Inc., by counsel, filed a Motion to Dismiss with Memorandum in Support. (Document Nos. 16 and 17.) PrimeCare argues that Plaintiff's Complaint should be dismissed for the following reasons: (1) Plaintiff failed to properly serve process upon PrimeCare pursuant to Rule 4(h) of the Federal Rules of Civil Procedure; (2) Plaintiff's claim fails to establish that Defendants were deliberately indifferent to a serious medical need; and (3) Plaintiff failed to exhaust his administrative remedies. (Document No. 16.)

Defendant Browning, by counsel, also filed a Motion to Dismiss with Memorandum in Support on April 17, 2007. (Document Nos. 18 and 19.) Defendant Browning contends that Plaintiff's Complaint must be dismissed for the following reasons: (1) Plaintiff fails to state a cause of action based upon a theory of deliberate indifference to Plaintiff's serious medical needs; (2) Plaintiff failed to serve Defendants with a proper screening certificate of merit as required by the West Virginia Medical Professional Liability Act; (3) Defendant Browning is entitled to good faith, qualified immunity; and (4) Plaintiff failed to properly exhaust his administrative remedies. (Document No. 18.)

On April 30, 2007, Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff, advising him of his right to file a response to the Defendants' Motions to Dismiss and in the Alternative Motion for Summary Judgment. (Document No. 21.) On May 8, 2007, Plaintiff filed his "Answer to Defendants' Motion to Dismiss." (Document Nos. 22 and 23.) Plaintiff's Answer asserts that he suffered injury "as a direct and proximate result of the unlawful, wilful, intentional, malicious, unjustifiable, negligent acts, conduct and behavior" of Defendants

3

Huppenthal and Browning. (Document No. 23, p. 8.) Additionally, Plaintiff appears to allege that Defendants Huppenthal and Browning conspired to inflict cruel and unusual punishment upon him. (Id., pp. 8-9.) Finally, Plaintiff states that he exhausted his administrative remedies by filing a medical request and grievance with Defendant Huppenthal. (Document No. 22, p. 6.)

On May 17, 2007, PrimeCare filed a Reply to Plaintiff's Answer. (Document No. 24.) PrimeCare states that "Plaintiff waives any claim that his complaint was properly served on this defendant and apparently agrees that service upon this defendant was improper" because Plaintiff fails to address the issue in his Answer. (Id., p. 1.) PrimeCare alleges that Plaintiff fails to set forth any allegations that the treatment he received was "so grossly incompetent, inadequate, or excessive as to shock the conscious or to be intolerable to fundamental fairness." (Id., p. 2.) Furthermore, PrimeCare contends that Plaintiff has not presented evidence of exhaustion. (Id.)

On May 18, 2007, Defendant Browning filed a Reply to Plaintiff's Answer stating Plaintiff's Complaint must be dismissed because there are no genuine issues of material fact and Plaintiff "cannot prove the essential elements required of one who pursues a medical professional liability action in West Virginia." (Document No. 25.)

On July 5, 2007, Plaintiff filed a Rebuttal to Defendant Browning's Reply stating that he has properly presented his Eighth Amendment claim by alleging the following elements: "(1) a wanton attack, meaning that the guard intended to harm the inmate; (2) the use of unnecessary force; and (3) resulting severe pain or lasting injury." (Document No. 27.) Plaintiff submitted the following statement by James Lee Tooley, an inmate at MOCC:

> I, James Lee Tooley, was an inmate in 2005 when I expressed to Mr. Woodson that one of his eyes was "glowing" like an animal's eye does when a bright light is shined on it at night. It is also noticeable without having a light shining in it. I told him it looks scarred and ask him if he could see out of it? I also expressed my concern

about his other eye, which had a milky look to it. He told me that Officer Hanson had burnt him with a lighter on his face and caused his eyesight to shut down. If I can be of any help, please let me know.

(Id., p. 9.) Finally, Plaintiff argues that his claim is based upon cruel and unusual punishment and he "never once charged that this claim was of medical malpractice by defendant." (Document No. 28.)

## THE STANDARD

### Motion to Dismiss

A *pro se* Complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines v. Kerner, 404 U.S. 519, 521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), *quoting* Conley v. Gibson, 355 U.S. 41, 45 - 46 (1957). Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

### Summary Judgment

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the

5

light most favorable to the non-moving party. <u>Matsushita</u>, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. <u>Celotex</u>, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

## <u>ANALYSIS</u>

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions though the administrative process may not afford them the relief they might obtain through civil proceedings.[4] <u>Woodford v. Ngo</u>, 548 U.S. __, 126 S.Ct. 2378, 2382 - 2383, 165 L.Ed.2d 368 (2006); <u>Porter v. Nussle</u>, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.); <u>Booth v. Churner</u>, 532 U.S. 731, 121 S.Ct. 1819, 1820,149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision

---

[4] 42 U.S.C. § 1997e(a) provides as follows:

No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

for monetary relief."). "[T]here is no futility exception to the PLRA's exhaustion requirement." Massey v. Helman, 196 F.3d 727, 733 (7th Cir. 1999). But the plain language of the statute requires that only "available" administrative remedies be exhausted. A grievance procedure is not "available" if prison officials prevent an inmate from using it. Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedy for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies.)

If an inmate exhausts administrative remedies with respect to some, but not all, of the claims he raises in a Section 1983, Bivens or FTCA action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. See Jones v. Bock, ___ U.S. ___, 127 S.Ct. 910, 913, 166 L.Ed.2d 798 (2007)("The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.") It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal. See Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001)(*overruled on other grounds*), a § 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in Neal, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, . . . if during the

pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. Neal, 267 F.3d at 123. In Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court. It is further clear that the PLRA does not require that an inmate allege or demonstrate that he has exhausted his administrative remedies. See Jones v. Bock, *supra*; Anderson v. XYZ Correctional Health Services, 407 F.3d 674, 677 (4th Cir. 2005). Failure to exhaust administrative remedies is an affirmative defense. Prison officials have the burden of proving that the inmate had available remedies which he did not exhaust. See Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004)("Although exhaustion of administrative remedies is a precondition to a federal prisoner filing a Bivens suit, [citations omitted] failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving." (Citations omitted))

The West Virginia Regional Jail and Correctional Facility Authority has established a three-step process in which "[a]ny inmate may file a grievance if they believe they have a serious complaint or a significant problem." See WV Regional Jail and Correctional Facility Authority Handbook of Inmate Rules and Procedures. (Document No. 12-2, p. 4.) The inmate's first required step is to submit a grievance on a form provided by jail personnel, to the Administrator. If the grievance, on its face, appears to have been filed in bad faith, the Administrator may reject the grievance. If however, the grievance is not rejected, the Administrator may afford the inmate an

opportunity to be heard and assign a staff member to investigate the complaint and file a written report within 48 hours. The Administrator then must furnish the inmate with a written decision within 24 hours of receipt of the investigation report. The inmate may appeal an unfavorable response to the Chief of Operations within five days of the receipt of the Administrator's decision. This Level Two appeal must be accompanied with copies of the initial grievance and the Administrator's decision. Finally, if dissatisfied with the decision of the Chief of Operations, the inmate may "request a review by the office of the Executive Director" within 5 days of the receipt of the Level Two Decision. The administrative process is exhausted when the Executive Director issues a ruling on the inmate's final appeal.

From the record available to the Court, it appears that Plaintiff filed his Complaint without first exhausting his administrative remedies pursuant to the PLRA. Defendants submit the Affidavit of John L. King II, Chief of Operations for the West Virginia Regional Jail and Correctional Facility Authority, as an Exhibit to their Motion to Dismiss. (Document No. 12-2, p. 5.) Mr. King states that as Chief of Operations, he is required "to oversee and implement Policy and Procedures for the operations of the Regional Jail System." (Id.) He briefly describes the administrative process, as discussed above, which must be exhausted before an inmate can proceed under Section 1983. Mr. King reviewed the Inmate Correspondence and Grievance Appeal files and "found that Inmate Woodson has not filed any Inmate Grievance appeal concerning the subject matter of this case." (Id. p. 6.) Plaintiff argues that he satisfied the requirements of exhaustion by filing a medical request and grievance with Defendant Huppenthal. (Document No. 22, p. 6.) Specifically, Plaintiff states that he "filed both a request and grievance to Mr. Huppenthal asking for help" and "[i]t was Ms. Browning who made my complaint into a medical request and grievance." (Document No. 28,

p. 3.) Based on the Court's review of the record, it appears that Plaintiff's grievance dated March 7, 2006, was referred to the medical administration and answered by Defendant Browning on March 9, 2006. (Document No. 22, p. 15.) Plaintiff contends that "[t]here was not exhaustion, because Ms. Browning committed forgery." (Document No. 28, p. 3.) Plaintiff, however, failed to appeal Defendant Huppenthal's decision to refer the grievance or Defendant Browning's response. According to the West Virginia Division of Corrections' grievance procedure, an inmate must appeal any disfavorable decision by the Administrator to the Chief of Operations. Additionally, there is no allegation that Plaintiff was prevented from filing a grievance or an appeal. Plaintiff merely argues that his March 7, 2006, grievance was improperly construed as a medical request. For these reasons, Defendants' Motions to Dismiss or in the alternative Motion for Summary Judgment (Document Nos. 12, 16, and 18.) must be granted. Having concluded that this action must be dismissed because Plaintiff failed to exhaust administrative remedies, the undersigned finds it unnecessary to consider the other reasons which the Defendants submit for dismissal.

## <u>PROPOSAL AND RECOMMENDATION</u>

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** Defendants' Motions to Dismiss or in the alternative Motion for Summary Judgment (Document Nos. 12, 16, and 18.), **DISMISS** Plaintiff's Complaint (Document No. 1.) and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Thomas E. Johnston. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule

6(e) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have thirteen days from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Johnston and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to Plaintiff, who is acting *pro se*, and counsel of record.

ENTER: February 28, 2008.

R. Clarke VanDervort
United States Magistrate Judge